UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NEW ORLEANS REGIONAL TRANSIT AUTHORITY BOARD OF COMMISSIONERS, ET AL. | CIVIL ACTION |
| VERSUS | NO. 13-404 |
| BOARD OF TRUSTEES OF TRANSIT MANAGEMENT OF SOUTHEAST LOUISIANA, INC., RETIRED INCOME PLAN, ET AL. | SECTION "H"(5) |

### ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Remand.  (Doc. 9.)  For the following reasons, the Motion is DENIED.

### BACKGROUND

In October, 2008 Veolia Transportation ("Veolia") was selected to manage and operate the

1

transit system for the New Orleans Regional Transit Authority ("RTA").  Veolia took over these services from the Transit Management of Southeast Louisiana, Inc. ("TMSEL").

The Transit Management of Southeast Louisiana, Inc. Retirement Income Plan and Trust ("TMSEL Plan") covers both retired TMSEL employees and Veolia employees who are fully vested in the TMSEL Plan.  As a result of losing its contract with the RTA, TMSEL cannot afford to fund the TMSEL Plan.  Moreover, Veolia has refused to sign on as the TMSEL Plan sponsor and/or administrator.  Given the foregoing, the TMSEL Plan is financially unstable.  In light of these developments, the Pension Benefit Guaranty Corporation ("PBGC") threatened to terminate the TMSEL Plan.  Termination would deprive employees of fully funded pensions at retirement age.

To prevent the termination of the TMSEL Plan, the RTA negotiated and reached an agreement with the PBGC to ensure continued funding of the TMSEL Plan ("Funding Agreement"). The ability of the RTA to control the Board of Trustees of the TMSEL Plan  ("TMSEL Plan Board") is a condition precedent to the execution of the Funding Agreement.  The TMSEL Plan Board is responsible for the administration, management, and proper operation of the TMSEL Plan.

In light of the Funding Agreement, two Amendments were proposed to the TMSEL Plan Board. The Amendments would effectively allow the New Orleans Regional Transit Authority Board of Commissioners ("RTA Board") to make four appointments to the TMSEL Plan Board as required by the Funding Agreement.

At a regular meeting on August 18, 2011, the TMSEL Plan Board declined to adopt the

2

Amendments. On August 22, 2011 the TMSEL Plan Board held a special meeting to reconsider the Amendments. The Amendments were unanimously approved. Both of the Amendments were effective as of the date of the special meeting.

Pursuant to the adoption of the Amendments, the terms of the following trustees ended on October 10, 2012 - William Deville ("Deville"), Mac Brown ("Brown"), Joseph Dorsey ("Dorsey"), Janice Abadie ("Abadie"), and Rosalind Cook ("Cook") (collectively the "Replaced Trustees"). Also on October 10, 2012, the RTA Board appointed four individuals to serve on the TMSEL Plan Board: Frank Jobert, Jr. ("Jobert"), Lawrence Moody, Jr. ("Moody"), Antonio Monk ("Monk"), and Eula Beckwith ("Beckwith") (collectively the "New Trustees"). The RTA Board expected the New Trustees to formally take their seats on the TMSEL Plan Board at its regularly scheduled meeting on October 18, 2012.

Subsequent to the appointment of the New Trustees, RTA's general counsel notified Chairman of the TMSEL Plan Board, Dexter Joiner ("Joiner"), of the new appointments to the TMSEL Plan Board. Joiner and Richard Goins ("Goins"), general counsel for the TMSEL Plan, were allegedly supposed to inform the Replaced Trustees that their term as trustees ended on October 10, 2012. Joiner and Goins failed to inform the Replaced Trustees.

Both the New Trustees and the Replaced Trustees attended the October 18, 2012 regular meeting of the TMSEL Plan Board. Joiner allowed the Replaced Trustees to sit as trustees during the meeting over the objections of Dorsey. Joiner further advised the TMSEL Plan Board that the

3

New Trustees would be seated at the December 20, 2012 regular meeting of the TMSEL Plan Board.

At the December 20, 2012 regular meeting, Goins asserted that the TMSEL Plan Board failed to amend the Trust Agreement. Goins stated that because the un-amended Trust Agreement does not allow the RTA to make appointments to the TMSEL Plan Board, then the four appointments were invalid. In accordance with these statements the TMSEL Plan Board voted to rescind the Amendments approved during the August 22, 2012 special board meeting.

In February, 2013 RTA and the RTA Board filed a Petition in Orleans Parish requesting a declaration determining: (1) the validity of the Amendments; (2) whether the actions taken by the TMSEL Plan Board on December 20, 2012 were void; and (3) the validity and effective date of the RTA Board's October 10, 2012 appointments to the TMSEL Plan Board. Plaintiffs also sought injunctive relief ordering the Replaced Trustees from serving and/or acting as officers and/or trustees of the TMSEL Plan Board.

On March 4, 2013 Defendants, save TMSEL, ("Removal Defendants") removed the case to this Court. (Doc. 1.) On March 20, 2013 Plaintiffs filed a Motion to Remand. (Doc. 9.) Removal Defendants opposed the Motion on April 15, 2013. (Docs. 23, 24, 25.) Plaintiffs filed a reply brief on April 22, 2013. (Doc. 34.) The Court held oral argument on April 24, 2013 and took the Motion under submission. (Doc. 35.)

4

**LEGAL STANDARDS**

*I.     Remand*

Generally, a defendant may remove a civil state court action to federal court if the federal court has original jurisdiction over the action.  28 U.S.C.A. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 34 (2002).  The burden is on the removing party to show "[t]hat federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002).  When determining whether federal jurisdiction exists, courts consider "[t]he claims in the state court petition as they existed at the time of removal."  *Id.* (citing *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir. 1995)).  Removal statutes should be strictly construed, and any doubt as to whether removal is appropriate should be resolved in favor of remand.  *Id.* (citing *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000).

*II.    Federal Question Jurisdiction*

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "Whether a claim arises under federal law is a question determined by reference to the plaintiff's 'well-pleaded complaint.'" *PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005).  "Under the well-pleaded complaint rule, federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (citations and quotations omitted).  "The

defendant bears the burden of demonstrating that a federal question exists." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

There is an exception to the well-pleaded complaint rule, however, when a federal statute wholly displaces a state-law cause of action through complete preemption. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citations and quotations omitted). Thus, "even if a complaint does not refer to federal law, a federal statute that completely preempts a field effectively recharacterizes preempted state law claims as arising under federal law for the purposes of making removal available to the defendant." *Omega Hosp., LLC v. Aetna Life Ins. Co.*, No. 08-3717, 2008 WL 4724294, at * 2 (E.D. La. Oct. 22, 2008) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998)). Removal is therefore appropriate under such circumstances "[b]ecause when the federal statute completely preempts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health, Inc.*, 542 U.S. at 207.

## LAW AND DISCUSSION

Here, Plaintiffs assert only state law claims against non-diverse Defendants. Consequently, a federal question does not exist on the face of their complaint. Defendants argue, however, that because ERISA wholly displaces the pleaded state law causes of action through complete preemption, then this Court has proper jurisdiction. This Court agrees.

I. ERISA Preemption

"Federal preemption is ordinarily a federal defense to the plaintiff's suit." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). "As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Id.* On the other hand, "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63-64. ERISA is one of these statutes. *Davila*, 542 U.S. at 208. Accordingly, "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Id.* at 209.

There are two ways in which ERISA may preempt state law claims. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). "First, ERISA may occupy a particular field, resulting in complete preemption under § 502(a)." *Id.* Alternatively, ERISA might preempt a state law cause of action by way of conflict or ordinary preemption under § 514. *Id.* at 337.

A. Complete Preemption Under Section 502

Section 502 enumerates ten different instances in which a civil action may be brought under ERISA. 29 U.S.C. § 1132(a). These enumerated claims present a federal question, which provides grounds for a district court's exercise of jurisdiction upon removal. *Giles*, 172 F.3d at 337. As such, Section 502 "[c]ompletely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *Id.* In this situation, if a plaintiff moves to remand, all

7

the defendant has to do is demonstrate one of the plaintiff's claims are preempted by ERISA under Section 502, and the Court may not remand. *Id.*

      B.      <u>Ordinary or Conflict Preemption Under Section 514</u>

Section 514 states that the provisions of ERISA "[s]hall supersede any and all State laws insofar as they now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Conflict preemption exists when a state-law claim falls outside of the scope of Section 502, yet still "relates to" an ERISA plan under Section 514. *Kersh v. UnitedHealthcare Ins. Co.*, No. SA: 13-CV-00052-DAE, 2013 WL 2286078, at *7 (W.D. Tex. May 23, 2013). "A state cause of action 'relates to' an employee benefit plan whenever it has 'a connection with or reference to such a plan.'" *Id.* (quoting *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1329 (5th Cir. 1992)).

Even though Section 514 may preclude the enforcement of a state law claim, removal of such a claim is inappropriate. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23–27 (1983); *see also Giles*, 172 F.3d at 337 (finding that absent complete preemption the district court lacks the power to do anything other than remand to state court). "Rather than transmogrifying a state cause of action into a federal one – as occurs with complete preemption – conflict preemption serves as a defense to state action." *Giles*, 172 F.3d at 337. Thus, "state law claims [that] fall outside the scope of ERISA's civil enforcement provision, § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete preemption principles established in

8

*Metropolitan Life*." *Giles*, 172 F.3d at 337 (quoting *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995)).

II.     *Whether Plaintiffs' Claims are Completely Preempted*

Defendants argue that Plaintiffs' action is governed by Section 502(a)(3) thereby warranting complete preemption. Defendants aver that Plaintiffs' claims fit squarely within this provision of ERISA's civil enforcement scheme because Plaintiffs are alleged plan fiduciaries seeking equitable relief, including injunctive relief, to enforce or remedy perceived violations of the Plan terms. This Court agrees.

The Court examines the applicability of ERISA Section 502(a)(3) in two phases. First, whether it is being brought by the proper party – e.g. a participant, beneficiary or fiduciary. Second, the Court examines whether the proper action is being brought under Section 502(a)(3)(A) or (B). The Court finds that a proper party, a fiduciary, is bringing a proper action to obtain appropriate equitable relief.

   A.     Section 502(a)(3) Generally

Section 502(a)(3) provides that a civil action may be brought –

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). Section 502(a)(3) is considered a "catchall" provision. *Varity Corp. v. Hose*,

9

516 U.S. 489, 512 (1996).  Accordingly, Section 502(a)(3) acts a safety net and offers "[a]ppropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.*

    B.    <u>Proper Party</u>

Plaintiffs are neither a participant nor beneficiary.  Accordingly, in order for Section 502(a)(3) to be applicable they must be deemed a fiduciary.  Under ERISA

> [a] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercise of any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  "[T]he board of directors of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in [§ 1002(21)(A)] of the Act."  29 C.F.R. § 2509.75–8.  Accordingly, the RTA Board will be a fiduciary to the extent that it has authority or control over the management of the plan, its assets, or the administration of the plan.  *See* 29 U.S.C. § 1002(21)(A).

If a board of directors is responsible for the selection and retention of plan fiduciaries, the board of directors is considered exercising discretionary authority or control over the management of the plan, and are therefore considered fiduciaries.  29 C.F.R. § 2509.75–8.  Further, a board of directors is a fiduciary to the extent that the board uses its authority to appoint *trustees*. *Sommers*

*Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1460 (5th Cir. 1986) (emphasis added).

The Court finds that the RTA Board has acted as a fiduciary in working towards obtaining control of the TMSEL Plan Board. (Doc. 1-2 at ¶23.) In order to gain control, the RTA must appoint four trustees to the TMSEL Plan Board. This is precisely the type of discretionary authority and control over the management of a plan that is described in Section 1002(21)(A).

C.    Proper Action

Next, the Court must determine if Section 502(a)(3)(A) or (B) applies. Plaintiffs argue that they have not alleged that the Defendants violated ERISA or any plan terms, and thus this provision is inapplicable. Plaintiffs, however, fail to address part (B) of Section 502(a)(3). As explained below, the Court finds that their claims fall squarely within this provision.

Plaintiffs seek a declaratory judgment and injunction. The Supreme Court has held that "equitable relief" refers to those categories of relief that were typically available in equity, including injunctive relief.[1] *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993). Because

---

[1] The Fifth Circuit in *Bauhaus USA, Inc. v. Copeland* addresses the issue of whether declaratory relief is considered a remedy typically available in equity. 292 F.3d 439 (5th Cir. 2002). The *Bauhaus* court first noted that "[a]t least in the federal courts, declaratory judgment was not a remedy 'typically available' in equity, as *Mertens* requires." *Id.* at 447. The Court went on to state, however, that "[d]eclaratory judgment's historical roots do lie in equity." *Id.* at 448--49. Notwithstanding the distinction between *Bauhaus* and *Mertens*, Section 502(a)(3) still applies. Unlike *Bauhaus*, Plaintiffs here make dual requests for relief including injunctive relief. Accordingly, Plaintiffs claims fall within the parameters as outlined by *Mertens*.

Plaintiffs seek injunctive relief, Section 502(a)(3)(B) is applicable if Plaintiffs action is to redress violations to the plan or to enforce provisions of the plan. *See* 29 U.S.C. § 1132(a)(3)(B).

Plaintiffs' claims center around the validity of the Amendments and the rights thereof– e.g. the right to appoint trustees to the TMSEL Plan Board. In *Ross v. Rail Car America Group Disability Income Plan,* the plaintiff sought to invalidate amendments to a plan. 285 F.3d 735, 739 (8th Cir. 2002). The court held that this cause of action could only be characterized as arising under Section 502(a)(3) of ERISA. *Id.* at 741; *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 678 (S.D. Tex. 2003).

Similarly, the Plaintiffs here are seeking to validate amendments to the TMSEL Plan. Section 12.1 of the TMSEL Plan governs amendments to the TMSEL Plan. (Doc. 23-1 at 92.) Additionally, Section 9.1 of the TMSEL Plan governs the administration of the TMSEL Plan and the composition of the TMSEL Plan Board. (*Id.* at 80.) Accordingly, these provisions must be interpreted and subsequently enforced in order to obtain a resolution. As such, the Court finds that Plaintiffs claims come within the purview of Section 502(a)(3).

III.     *Conclusion*

Because Plaintiffs' claims implicate ERISA under Section 502, as opposed to Section 514, the claims are completely preempted. Accordingly, the Court must exercise jurisdiction over this case and deny Plaintiffs' Motion to Remand.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is DENIED.

New Orleans, Louisiana, on this 14th day of June, 2013.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**